

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00107-CV
_____

JESSICA SEIDLER, Appellant

V.

JAMES M. MORGAN D/B/A FISH CREEK RANCH,
AND MORGAN LAND AND CATTLE PARTNERS, LTD.,
D/B/A FISH CREEK RANCH, Appellees

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 06C1353-102

Before Morriss, C.J., Moseley and Cornelius,* JJ.
Opinion by Justice Moseley

_____

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

OPINION

This is an appeal from the grant of a summary judgment.

Jessica Seidler accompanied her fiancé on vacation to Fish Creek Ranch, located in mountainous southwest Colorado near Dolores, Colorado. Although she was not an experienced equestrian, she was invited to take a horseback ride on October 6, 2004. The docile horse which was initially selected for her was saddled, but the saddle began to slip; the wife of the ranch employee who was helping her selected a different and more spirited mount for Seidler's use. During Seidler's ride, the horse upon which she was mounted bolted in fear from sudden thunder, causing Seidler to fall heavily to the ground. As a result of the fall, Seidler suffered a dislocated hip, a debilitating and painful injury. Seidler filed suit October 6, 2006 (two years to the day after the injury) against James M. Morgan and Morgan Land and Cattle Partners, Ltd., each doing business as Fish Creek Ranch, to recover for the damages she had sustained.

The named defendants filed a combined no-evidence and traditional motion for summary judgment, based upon the defendants' contention that they were the wrong parties against whom suit was brought; the defendants maintained in their motion that Fish Creek Ranch belonged to neither of the defendants at the time of the injury.[1] There is a wealth of similar names here; James M. Morgan is an individual who is an officer and shareholder of Jack B. Kelley Enterprises, Inc., a

_____

[1]In their original and amended answer, the defendants made a verified plea that neither was liable in the capacity in which they were sued, that there was a defect of parties defendant, and denied the existence of a partnership as alleged. However, Seidler declined to amend her pleadings.

shareholder and officer of Morgan Land and Cattle, Inc. (the general partner of Morgan Land and Cattle Partners, Ltd.). For the purposes of this opinion, "Morgan" shall mean James M. Morgan, "Morgan Land" shall mean Morgan Land and Cattle Partners, Ltd., and "Morgan, Inc." shall mean Morgan Land and Cattle Company, Inc.

The trial court granted the motion for summary judgment and Seidler has filed her appeal of that summary judgment.

On appeal, Seidler argues that her inaccurate naming of the party might nonetheless be construed to adequately name the correct party. The focus of appellant's argument is the application of Rule 28 of the Texas Rules of Civil Procedure, with several additional arguments that attempt to avoid application of the corporate fiction.

A somewhat detailed procedural history of this case is needed in order to understand the arguments raised here. Seidler sued Morgan d/b/a Fish Creek Ranch and Morgan Land d/b/a Fish Creek Ranch on October 6, 2006, the day before limitations ran. After some discovery had occurred, the defendants filed a motion for summary judgment, claiming that at the time of the accident, the ranch was not owned by either of the parties named as defendants but, rather, was owned by Jack B. Kelley Enterprises, Inc., which had never done business under the assumed or trade name "Fish Creek Ranch." Thus, defendants argue, neither Morgan nor Morgan Land are proper defendants.

Defendants also argued that although Seidler had been put on notice of the defect, she did not amend her petition to name the correct party.

3

The summary judgment evidence shows that the owner of the property at the time of the accident was Kelley Enterprises. Kelley Enterprises had sold the property to Morgan Land almost a year before suit was filed. Accordingly, the defendants maintain that the ranch was never owned by Morgan and although Morgan Land was the owner of Fish Creek Ranch at the time the suit was filed, it had not been the owner when Seidler was injured.

Seidler brought her suit against both Morgan and Morgan Land as entities "d/b/a Fish Creek Ranch." The undisputed evidence shows that neither entity was individually liable as named, as it shows that neither Morgan nor Morgan Land owned the property at the time of the accident. We also note that the summary judgment evidence shows that neither entity ever did business as Fish Creek Ranch during the relevant time frame. "Fish Creek Ranch" appears to be the name of a place and not the name of a business.

At this point in the proceeding, Seidler does not contend that Morgan or Morgan Land ever did business as Fish Creek Ranch. Her argument is that because she named Fish Creek Ranch as the assumed name of a business entity, she had adequately set that entity up as a defendant under the authority of Rule 28 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 28.

**The Motion for Summary Judgment**

Morgan and Morgan Land filed a motion for summary judgment raising both traditional and no-evidence claims. They stated in the motion that neither of them were proper parties to the suit. Morgan argued that since he had never owned the property in his individual capacity, he was not a

proper individual party; Morgan Land argued that it did not own the property at issue at the time Seidler's injury occurred, so suit against it was improper.

In her response to the motion for summary judgment, Seidler raised a form of piercing the corporate veil argument, suggesting that because she had evidence showing that Morgan was an officer of both entities (Morgan Land and Kelley Enterprises) at the time of her injury, because there was an overlap in the business activities of both entities, because the same family members were involved in both entities, and because the family members benefitted from the ownership of Fish Creek Ranch by the successive ownership of the two business entities, the two business entities were either alter egos of one another or were engaged in joint enterprises. She thus concluded that a suit brought against either Morgan or Morgan Land was tantamount to having brought suit against (and provided notice of the suit to) both corporations. In the further alternative, Seidler argued for the first time in her summary judgment response that the sale from one entity to the other was a sham transaction. Seidler also argued that because she had pled that the current owner, Morgan Land and Morgan were "doing business as" Fish Creek Ranch, she could follow that skein from that naming to bring the previous owner into the lawsuit as a named party. On appeal, Seidler also claims that Morgan was in control of both Kelley Enterprises and Morgan Land and that the corporate veil of each should be pierced to subject Morgan to individual liability.

The trial court granted Morgan and Morgan Land's joint motion for summary judgment.

5

**Standards of Review**

When reviewing a traditional summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). On appeal, the movant must show there is no material fact issue and that the movant is entitled to judgment as a matter of law. *McNamara*, 71 S.W.3d at 311; *Steel*, 997 S.W.2d at 223; *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671 (Tex. 1979).

In a Rule 166a(i) no-evidence summary judgment, the movant represents that no evidence exists as to one or more essential elements of the nonmovant's claims, upon which the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The nonmovant then must present evidence raising a genuine issue of material fact on the challenged elements. *Id.* To defeat a no-evidence motion for summary judgment, the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements. TEX. R. CIV. P. 166a(i) cmt.

A no-evidence summary judgment is essentially a pretrial directed verdict. Therefore, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002).

6

We must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Id.*; *Woodruff v. Wright*, 51 S.W.3d 727 (Tex. App.—Texarkana 2001, pet. denied). A nonmovant will defeat a no-evidence summary judgment motion if the nonmovant presents more than a scintilla of probative evidence on each element of his or her claim. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70–71 (Tex. App.—Austin 1998, no pet.).

In our review, we consider all the summary judgment evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

**Analysis**

On appeal, Seidler contends that the court erred by granting summary judgment. She argues that the parties she named were the correct entities, not because Morgan Land or Morgan actually owned the property at the time of Seidler's injury, but because they are so interlinked and intertwined with Kelley Enterprises as to make a suit against one of them a suit against all. She also argues that because she stated that the entities were "doing business as" Fish Creek Ranch, any prior entity that had owned Fish Creek Ranch was necessarily properly named thereby as a party. She then proceeds in her argument to say that notice to Kelley Enterprises of the suit was adequate because one of the entities served (Morgan) is a limited partner in Morgan Land and an officer and stockholder in both

7

Morgan, Inc. (the general partner of Morgan Land) and in Kelley Enterprises, the last two of these entities being both the entity which now owns Fish Creek Ranch and the entity which owned it at the time of the accident. She goes further to point out that Kelley Enterprises had the same agent for service of process in Colorado as Morgan Land.

Seidler bases her first series of arguments upon the application of Rule 28 of the Texas Rules of Civil Procedure. The rule reads:

**Suits in Assumed Name**

Any partnership, unincorporated association, private corporation, or individual doing business under an assumed name may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right, but on a motion by any party or on the court's own motion the true name may be substituted.

Seidler argues that the court erred because filing suit against "Fish Creek Ranch" properly sued whatever entity it was as a "common name" under TEX. R. CIV. P. 28.

There are several problems with this position.

On a very basic level, the summary judgment evidence shows that no entity (neither the parties named in the lawsuit nor the unnamed Kelley Enterprises) ever did business under the name of Fish Creek Ranch. The evidence clearly shows that although the property upon which business was conducted was identified as Fish Creek Ranch and can easily be considered as the "common name" of the property, there is no evidence to support the predicate requirement. Before the use of

8

a common name is adequate under Rule 28, there must be a showing that the named entity is in fact doing business under that common name.

Simply because a place name may be commonly informally used (as has apparently been done here) does not mean that the name of the site and the type of business conducted there is "doing business as." There was evidence that neither Morgan Land nor Morgan had ever done business under that name and there was no evidence that they ever did. Payments to the employees and to suppliers were not made under the name of Fish Creek Ranch; rather, they were made by Morgan Land. Neither Morgan nor Morgan Land ever adopted the formal assumed name of "Fish Creek Ranch" as allowed by statute; there is nothing in this record to reflect that the use of the name informally was done in any way other than a way to identify a physical asset of the corporation and the kind of business which was operated at that site. The only part of the summary judgment proof that might be said to even indicate that anyone ever did business under "Fish Creek Ranch" is the way that the property was listed on a property insurance policy—along with the then-owner, Kelley Enterprises.[2] The insurance policy generated by the Colorado Farm Bureau insurance company dated May 31, 2007, contains a summary of coverages on a number of pieces of property.

Morgan and Morgan Land argue that this was just the insurance company which so identified the property. We do recognize that an insurance policy is not a unilateral contract; although the insurance company issued the policy, Kelley Enterprises appears to have accepted it, presumably

_____

[2]The identifier reads: "Jack B. Kelley Enterprises & Fish Creek Ranch."

paid for it, and has possibly accepted benefits under it. However, that isolated use in such an unclear setting is not sufficient to stand as evidence that Kelley Enterprises actually did business in that name. It is no more than a scintilla, and only a scintilla that might raise an implication, rather than show a fact.

Further, even if the mention of Fish Creek Ranch in the insurance policy were strong evidence, it would be evidence only of a relationship between Kelley Enterprises and the "Fish Creek Ranch" name. It is no evidence of such a relationship between Morgan Land or Morgan and Fish Creek Ranch. The only way in which this could morph into relevant evidence is if we concluded that there was a fact issue as to whether Morgan Land and Kelley Enterprises were so intertwined as to be the same entity.

In addition, it is more likely that this identification was intended to limit the liability of the insurance company under the policy to the business which was being conducted at that site and not Kelley Enterprises's entire business operations.

Even if we concluded that this is some evidence that both Kelley Enterprises and Morgan Land each did business as Fish Creek Ranch, that does not indicate that Morgan Land would be responsible for liabilities which arose during the time that Kelley Enterprises owned the place and operated under that name, and there is no summary judgment evidence that this kind of liability was assumed by Morgan Land in its purchase of that asset.

Think of an ocean-going tanker which has a name (let us choose "Laura"), which is owned by corporation A; everyone refers to the business operations of that tanker as things done by the "Laura." The "Laura" has a huge oil spill and corporation A thereafter sells the tanker to corporation B, but the name remains the same and everyone still refers to her as the "Laura." Is corporation B going to be responsible for the oil spill? If the sale is an arms-length transaction, it would not be so.

We must also recognize that Seidler did not bring suit against the assumed name. She brought suit against Morgan and Morgan Land, with the notation that those entities were doing business as Fish Creek Ranch. That separates this situation from the one described in *Chilkewitz v. Hyson*, 22 S.W.3d 825 (Tex. 1999). In that case, the plaintiff sued Hyson as Morton Hyson, M.D., but was informed that the correct defendant would be Morton Hyson, M.D., Professional Association. Plaintiff promptly amended his pleading. The Texas Supreme Court determined that there was some evidence that a professional association comprised of only one professional did business in the name of the individual and had listings and advertisements under the physician's name, which made no mention of the professional association; therefore, suit against the individual under those circumstances would serve to sue the actual defendant, his professional association.

In this case, the suit as filed sought to recover for the alleged negligence of Morgan or Morgan Land, and then identified them as "doing business as" Fish Creek Ranch. There is no evidence that either Morgan or Morgan Land were doing business as Fish Creek Ranch at the time

11

of the injury and there is conclusive proof to the contrary. Although Seidler knew of the incorrect naming shortly after the defendants answered, she chose not to amend her pleadings to add the potentially-liable party. The way in which a suit is brought is solely under the control of counsel, subject to later complaint by the opposing side.

The uncontradicted summary judgment evidence shows the following:

- Neither Morgan nor Morgan Land owned Fish Creek Ranch when the injury occurred.

- Neither Morgan nor Morgan Land used "Fish Creek Ranch" as an assumed name or did business under that name.

- Neither Morgan nor Morgan Land conducted any business in which they identified themselves as "Fish Creek Ranch."

- None of the entities that did business involving the ranch when it was owned by Kelley Enterprises either sent invoices addressed to Fish Creek Ranch nor were paid by any means which mentioned Fish Creek Ranch; rather, only Kelley Enterprises was billed or paid. Likewise, after the property was conveyed to Morgan Land, it did not use "Fish Creek Ranch" in its billings or payments.

- There is neither any evidence that Fish Creek Ranch was recognized as a business by the public at large nor was there any evidence that any effort was made by either owner to present it as such.

- "Fish Creek Ranch" was the name of the ranch. Although that was the common name of the location, it was not the common name of the business or owner.

- Further, applying the language of the rule, even if "Fish Creek Ranch" is the common name of the entity, there was no evidence that it was "doing business as" that name, or that it was an "assumed name" of the business.[3]

There is no doubt that "Fish Creek Ranch" was a name commonly used to identify the property. There is no evidence that either entity which owned the place, Morgan Land or Kelley Enterprises, or Morgan did business as "Fish Creek Ranch."

Accordingly, unless some other rule of law intervenes, there is no evidence that the named party is a proper party to this lawsuit, and summary judgment was therefore properly rendered.

We now move to Seidler's alternative arguments in which she attempts to interpose such alternative theories of law.

**Joint Enterprises?**

Seidler argues that there is some evidence that Morgan Land and Kelley Enterprises were engaged in a joint enterprise to acquire and hold Fish Creek Ranch for the use and benefit of the Morgan family and, on oral argument, that the two businesses were possibly alter egos of one another. She argues that we should pierce the corporate veils and conclude that the two entities are

---

[3]The Texas Business and Commerce Code contains a requirement in Texas that if an entity regularly conducts business under an assumed name, it must file a certificate with information about the business. TEX. BUS. & COM. CODE ANN. §§ 36.10, 36.11 (Vernon 2002) (violation is a misdemeanor (TEX. BUS. & COM. CODE ANN. § 36.26 (Vernon 2002))).

13

in reality a single entity with a single purpose. Thus, she concludes, by suing one, she also simultaneously sued the other.

Texas has adopted the restatement standard, finding that the elements which are essential to a joint enterprise are: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000); *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14 (Tex. 1974).

Seidler's argument is that Morgan Land, Kelley Enterprises, and Morgan entered into a joint enterprise to purchase and operate the ranch as a joint activity. The summary judgment evidence contains no written agreements among these parties, and there is no direct evidence of such an agreement. The evidence pointed to by Seidler consists of no more than the commonality of officers in the entities, with suggestions that we should ascribe some sinister motive thereto. There is summary judgment evidence that when Kelley Enterprises conveyed Fish Creek Ranch to Morgan Land, it received a secured multi-million dollar promissory note as a part of its compensation.

Further, in order to prove a joint enterprise between the two entities, there must be a common purpose of the two entities. Although Seidler argues that Morgan had a common purpose with Kelley Enterprises, that is not the correct object of an inquiry. She also suggests that the two business entities had a common purpose: to take care of Morgan's asset (the ranch). If that is true,

any two companies with common stockholders have a common purpose: to provide for the financial benefit of the stockholders. That is not the meaning of the concept. The term "enterprise" indicates that the entities are engaged in a common activity. Although Kelley Enterprises managed the ranch until its sale, and Morgan Land managed it after purchasing it, that does not suggest that the two entities were one.

Additionally, at oral argument, Seidler's lawyer stressed that both Kelley Enterprises and Morgan Land existed for the benefit of the Morgan family and, therefore, (1) should be treated as a single entity, subjecting both to liability and (2) that this somehow made Morgan individually liable.

The fact that the Morgan family would benefit from the actions of both entities is not a determinative factor. A major purpose of a corporation, a limited liability company, or a limited partnership is to provide a shield to personal liability. Although this legal shield may be inconvenient to her theory of recovery, to Seidler it is an inconvenient truth which may not be ignored.

Even without parsing the two remaining elements (as there is no evidence of these two elements), then neither the joint enterprise theory nor the alter ego theory could bring Kelley Enterprises into the ambit of the named parties.

15

**Piercing the Corporate Veil?**

Seidler also argues that there is some evidence to suggest that it would be appropriate to pierce the corporate veil, and thereby show that Morgan, an officer and shareholder in Kelley Enterprises and a limited partner in Morgan Land, was a proper party. Various theories exist for "piercing the corporate veil" or disregarding the corporate form. These theories must be specifically pleaded or they are waived, unless they are tried by consent. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991); *Town Hall Estates-Whitney, Inc. v. Winters*, 220 S.W.3d 71, 86 (Tex. App.—Waco 2007, no pet.).

In *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986), the Texas Supreme Court enumerated theories under which a corporate veil can be pierced:[4]

(1)     when the fiction is used as a means of perpetrating fraud;

(2)     where a corporation is organized and operated as a mere tool or business conduit of another corporation ("alter ego");

(3)     where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4)     where the corporate fiction is employed to achieve or perpetrate monopoly;

(5)     where the corporate fiction is used to circumvent a statute;

---

[4]Although *Castleberry* has been partially superseded by statute (*see* TEX. BUS. ORGS. CODE ANN. § 21.223(a) (Vernon Supp. 2008), the checklist within it remains useful for discussion.

(6)    where the corporate fiction is relied upon as a protection of crime or to justify wrong; and

(7)    inadequate capitalization so as to work an injustice; (*Id.* at 272 n.3) and two or more businesses were operated as a single business enterprise.

*Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Allright Tex., Inc. v. Simons*, 501 S.W.2d 145, 149–50 (Tex. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

Under *Willis v. Donnelly*, 199 S.W.3d 262 (Tex. 2006), which applies recent changes in the Texas Business Organizations Code, it is also apparent that any shareholder liability for wrongs done by a corporation exists only in extremely limited and statutorily defined circumstances, such as when a shareholder caused the corporation to be used for the purpose of perpetrating—and did perpetrate—an actual fraud on the obligee primarily for the direct personal benefit of the shareholder. *See* TEX. BUS. ORGS. CODE ANN. § 21.223(a). There was no evidence provided by Seidler to show that Morgan committed an act or followed a course of conduct which would make him liable for the acts of the entities involved.

In this case, Seidler argues that the corporate fiction should be disregarded and that Morgan is, thus, a proper party. The reason we should so conclude, Seidler argues, is because Morgan and his wife had full ownership of Kelley Enterprises and partial ownership (but complete control) over Morgan Land (because they owned and controlled its general partner, Morgan, Inc.). Thus, Morgan

17

and his wife did not treat the ranch as a separate corporate asset, but acquired it and its contents for their personal use.[5] As to a claim that Kelley Enterprises and Morgan Land are alter egos of one another, "The burden to prove alter ego rests upon the party who is arguing that the two parties are actually one entity." *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002). There is simply no proof proffered by Seidler to that effect and there is ample summary judgment evidence to rebut it.

The personal use or benefit claims are not proper reasons to apply the alter ego concept. In a plea directed more to emotion than reason, Seidler goes on to argue that the veil should be pierced because otherwise she, an injured person, will not be recompensed and the negligent party will avoid liability. Even if this is true, subjecting just anyone having any connection with an entity is not a reason to pierce the corporate veil. One reason for the existence of the legal veil is to insulate parties from liability. Further, there is no implication from the summary judgment proof that the sale had any linkage to the injury, or that any other act occurred for the purpose of improperly avoiding liability or to defraud any party. If Seidler had valid claims against another person or entity for the

[5]As to the attempt at piercing the veil of Morgan Land in order to pursue Morgan, we note that it is a limited partnership. The theory of piercing the corporate veil is inapplicable to limited partnerships. *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 499 (Tex. App.—Texarkana 2002, pet. denied). The Legislature altered the general scheme and statutorily created limited partnerships governed by the Texas Revised Limited Partnership Act. TEX. REV. CIV. STAT. ANN. art. 6132a-1 (Vernon Supp. 2008). Under the act, a "general partner of a limited partnership has the liabilities of a partner in a general partnership without limited partners to persons other than the partnership and the other partners." TEX. REV. CIV. STAT. ANN. art. 6132a-1, § 4.03(b). Therefore, if there were to be any piercing of a veil in order to subject Morgan to liability, it would have to be through Kelley Enterprises and not through Morgan Land.

18

injuries which she suffered, she could seek redress against the person or entity which could have liability; she opted to bring suit against others.

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:     January 21, 2009
Date Decided:       February 12, 2009

19