NO. 12-08-00315-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

DOMINGA PALOMINO
MENDOZA,       §                      APPEAL FROM THE 7TH

INDIVIDUALLY, AND AS THE
PERSONAL

REPRESENTATIVE OF THE
ESTATE

OF SAMUEL HERNANDEZ, DECEASED,

APPELLANT

 

V.                                                                    §                      JUDICIAL
DISTRICT COURT 

 

HARVEY F. CLINGFOST, III
d/b/a SWAN

CYCLE PARK, INC., HARVEY F.

CLINGFOST, JR. d/b/a SWAN
CYCLE

PARK, INC., PATRICIA E.
CLINGFOST

d/b/a SWAN CYCLE PARK, INC.
AND

SWAN CYCLE PARK, INC. d/b/a

SWAN RACEWAY PARK,

APPELLEES                                                 §                      SMITH
COUNTY, TEXAS







MEMORANDUM
OPINION ON REHEARING

            Dominga Palomino Mendoza, individually and as the personal representative
of the estate of Samuel Hernandez, deceased, has filed a motion for rehearing,
which is overruled.  We withdraw our opinion of January 29, 2010 and substitute
the following opinion in its place.

            Dominga
Palomino Mendoza, individually and as the personal representative of the estate
of Samuel Hernandez, deceased, appeals the trial court’s summary judgment
entered in favor of Harvey F. Clingfost, III d/b/a Swan Cycle Park, Inc.,
Harvey F. Clingfost, Jr. d/b/a Swan Cycle Park, Inc., Patricia E. Clingfost
d/b/a Swan Cycle Park, Inc., and Swan Cycle Park, Inc. d/b/a Swan Raceway Park. 
 Mendoza raises two issues on appeal.  We affirm.

 

 

 

Background

Swan Cycle Raceway Park is a motocross race track located near Tyler, Texas.  Swan Cycle Park,
Inc. (“Swan”) is owned by Harvey F. “Trey” Clingfost, III and his parents,
Harvey F. Clingfost, Jr. and Patricia E. Clingfost.  Trey
resides at the track and is more involved than his parents in its daily
operations.  Trey’s parents reside in the Houston area, but assist him on race
days and, from time to time, perform various jobs at the track.  Swan leases
the track from Trey and relies upon day laborers to handle the remainder of the
many tasks necessary to operate and maintain the facility.

Mendoza’s adult son, Hernandez, was a day laborer in Tyler, Texas.  Hernandez often worked
for Swan, but also worked on other jobs for other entities.  Swan attempted to
hire Hernandez when it had work for him.  When the work was complete, Hernandez
would find work with others.  Hernandez was paid by the day at a rate
determined by Swan.  Hernandez’s pay depended on the nature of the work he
performed and the amount of time required for him to complete the job.

On
July 19, 2006, Swan hired Hernandez to gather tires used as boundary markers on
the race track, paint them, and return them to the track.  Trey picked up
Hernandez that morning and took him to the track.  Trey, who spoke very little
Spanish, told Hernandez, who spoke very little English, what tasks were
required of him that day.  Thereafter, Trey went to his office located in his
house at the track to do paperwork.

Hernandez
used a five wheel John Deere AMT utility vehicle (“AMT”) and a trailer to
gather the tires.  Swan owned the AMT.  Trey owned the trailer.  Trey did not
specifically tell Hernandez to use the AMT and trailer, but he assumed that
Hernandez would use them.  Hernandez loaded approximately sixteen tires onto
the trailer and drove the AMT with the attached trailer across the track to the
barn where he would paint the tires.  As Hernandez was driving along a portion
of the track, he lost control of the AMT, which flipped and landed on top of
him.  By the time he was found, Hernandez had died from his injuries.

Mendoza brought the instant suit on her own behalf as a wrongful death beneficiary and on
behalf of Hernandez’s estate for the injuries he sustained before he died.  She
sued Swan for its actions related to Hernandez’s injuries and death.  She sued
the Clingfosts and sought to pierce the corporate veil of Swan.  As the trial
date approached, Swan and the Clingfosts filed a combined traditional and no
evidence motion for summary judgment in which they alleged that (1) Mendoza’s
claims were subject to Chapter 95 of the Texas Civil Practice and Remedies
Code, which concerns a property owner’s liability for acts of an independent
contractor,[1]
(collectively, the “statute”) and (2) Swan and the Clingfosts were entitled to
judgment as a matter of law because Mendoza could not satisfy the requirements
of the statute.  Mendoza responded that the statute did not apply to her claims
and, alternatively, that a fact issue existed preventing summary judgment.  The
trial court ultimately granted both Swan and the Clingfosts’ traditional and no
evidence motions for summary judgment and entered a judgment that Mendoza take
nothing.  This appeal followed. 

 

Summary Judgment

In
her second issue, Mendoza complains that the trial court erred by granting
summary judgment in favor of Swan and the Clingfosts.  

Standard of
Review

The
movant for traditional summary judgment has the burden of showing that there is
no genuine issue of material fact and that it is entitled to judgment as a
matter of law.  Tex. R. Civ. P. 166a(c);
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  The
movant must either negate at least one essential element of the nonmovant’s cause
of action or prove all essential elements of an affirmative defense.  See
Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).  Once the movant has established a right to summary judgment, the nonmovant has
the burden to respond to the motion for summary judgment and present to the
trial court any issues that would preclude summary judgment.  See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 678-79 (Tex. 1979).   

            We
review de novo the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
movant.  See Sudan v. Sudan, 199 S.W.3d 291,
292 (Tex. 2006); KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,
988 S.W.2d 746, 748 (Tex. 1999).  All theories in support of or in opposition
to a motion for summary judgment must be presented in writing to the trial
court. See Tex. R. Civ. P. 166a(c). 
If the trial court’s order does not specify the grounds on which it granted
summary judgment, we affirm the trial court’s ruling if any of the theories
advanced in the motion is meritorious.  State Farm Fire & Cas. Co. v.
S.S., 858 S.W.2d 374, 380 (Tex. 1993).  

When,
as here, a party moves for both a traditional and a no evidence summary
judgment, generally, we first review the trial court’s summary judgment under
the no evidence standards of rule 166a(i).  Ridgway, 135 S.W.3d
at 600.  If the no evidence summary judgment was properly granted, we do not
reach arguments made in support of the traditional motion for summary
judgment.  See id. at 602.  Of course, this rule does not apply
unless the same issue was raised in both motions.  See Dunn v.
Clairmont Tyler, L.P., 271 S.W.3d 867, 870 (Tex. App.–Tyler 2008,
no pet.).

 

Objections to Evidentiary Rulings and Applicability
of the Statute

            As
part of her second issue, Mendoza contends that the trial court erroneously
overruled her objections to the evidence attached to Swan and the Clingfosts’
traditional motion for summary judgment.  Mendoza objected to Swan and the
Clingfosts’ failure to specifically identify the portions of the exhibits that
supported their arguments.  She also objected to the affidavit of Harvey
Clingfost because the affidavit was not signed and notarized.   However, based
on our review of the record, it is apparent that the affidavit was sworn to,
signed, and notarized.  Thus, this objection lacked merit.  As to Mendoza’s
other objection regarding Swan and the Clingfosts’ failure to specifically
identify the portions of the exhibits that supported their arguments, Mendoza
failed to obtain rulings from the trial court on these objections.  See Tex. R. App. P. 33.1(a)(2).  Therefore,
since each of these objections pertain to form, Mendoza waived the objections
by failing to obtain rulings from the trial court.  See id.;
Stewart v. Sanmina Tex. L.P., 156 S.W.3d 198, 207 (Tex. App.–Dallas 2005, no pet.).  

            We
next consider whether the statute applies to Mendoza’s suit.[2]  As it
pertains to the case at hand, the statute applies when a claim is made against
a property owner for personal injury to or death of a contractor that arises
from the condition or use of an improvement to real property where the
contractor constructs, repairs, renovates, or modifies the improvement.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 95.002 (Vernon 2005).  Mendoza argues that several of the elements set forth
in section 95.002 are not present.  Specifically, Mendoza claims that the
statute does not apply because (1) three of the defendants were not owners of
the property, (2) the owner of the property was sued under the theory that the
owner was the alter ego of Swan, (3) the property was not used primarily for
commercial purposes, (4) this was not a construction project, (5) Hernandez’s
death was not caused by a condition or use of an improvement to real property
that he was constructing, and (6) Hernandez was an employee rather than an
independent contractor.  We address each of Mendoza’s arguments in turn.

            Property
Ownership

            A
“property owner” is a person or entity that owns real property primarily used
for commercial or business purposes.  Tex.
Civ. Prac. & Rem. Code Ann. § 95.001(3) (Vernon 2005).  Ownership of
a leasehold interest in real property satisfies this definition.  See
Painter v. Momentum Energy Corp., 271 S.W.3d 388, 397 (Tex. App.–El Paso 2008, pet. denied) (owner of leasehold interest entitled to protection of
the statute); see also State v. Fiesta Mart, Inc., 233 S.W.3d 50,
54 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) (lessee is
property owner).  Swan leased the track from Trey.  Therefore, Swan satisfies
the definition of a property owner under the statute.

            Alter
Ego Theory

Mendoza
sought to have the Clingfosts held personally liable under the corporate alter
ego theory.  Consequently, the Clingfosts’ liability, if any, is solely derived
from Swan’s liability.  See Seidler v. Morgan, 277 S.W.3d 549,
557-58 (Tex. App.–Texarkana 2009, pet. denied).  Mendoza argues that his
bringing suit against the Clingfosts as the alter ego of Swan removes them from
the governance of the statute.  However, Mendoza cites no authority in support
of this proposition, nor are we aware of the existence of any such authority.  

To
the contrary, under Mendoza’s theory of liability, Swan is the same as the
Clingfosts, i.e. the Clingfosts step into the shoes of Swan.  Thus, for the
purposes of Mendoza’s claims, since Swan held an ownership interest in the
property, the Clingfosts also held an ownership interest in the property.  See,
e.g., Murray v. O&A Express, Inc., 630 S.W.2d 633, 636
(Tex. 1982) (plaintiff=s
petition defines issues in the lawsuit).  

            Commercial
Use of the Property

The
evidence also indicates that the property was used for business purposes at all
times.  Trey resided on the property in a house with a home office very near
the track.  Nonetheless, it is undisputed that Hernandez was injured on the
track.  The record further reflects that Swan leased the track for business
purposes.  Thus, we conclude that the primary purpose of the property involved
in this case was commercial or business.

            Construction
Project

            Mendoza
argues that this case does not involve a construction project and Hernandez’s
death was not caused by a condition or use of an improvement to real property
that he was constructing.  The crux of the issue is whether the motocross track
with tires outlining the boundaries constitutes an improvement under the
statute.  An improvement includes all additions to land other than trade
fixtures that can be removed without injury to the property.  Sonnier v.
Chisholm-Ryder Co., 909 S.W.2d 475, 479 (Tex. 1995).  An “improvement”
has also been defined as

 

[a] valuable addition made to property (usually real
estate) or an amelioration in its condition, amounting to more than mere
repairs or replacement, costing labor or capital, and intended to enhance its
value, beauty or utility or to adapt it for new or further purposes.  Generally
has reference to buildings, but may also include any permanent structure or
other development such as a street, sidewalk, sewer utilities, etc.

 

 

Black’s Law Dictionary 757 (6th ed.
1990).

            The
summary judgment evidence indicates that Swan owned a racing and race training
facility, a central feature of which was the motocross track comprising hills
for jumps and tire stacks to delineate boundaries.  The record further reflects
that the motocross track was a permanent structure and was intended to enhance
the value of the property.  Thus, we conclude that the motocross track in the
instant case constitutes an improvement.

            Furthermore,
even though the record indicates that Hernandez was working on the tires at the
track rather than the track itself, Hernandez’s work satisfies the statute’s
requirement that the claim arise from the contractor’s constructing, repairing,
renovating, or modifying the improvement.  The evidence indicates that
Hernandez was hired to take the tires off the track, paint them, and reposition
them on the track.  Because the tires were part of the boundary of the track,
Hernandez was repairing, renovating, or modifying the improvement when he had
his accident.  See Francis v. Coastal Oil & Gas Corp., 130
S.W.3d 76, 85 (Tex. App.–Houston [1st Dist.] 2003, no pet.) (cleaning of coil
tubing of well qualifies as either repair or renovation of well).

            Employee
versus Independent Contractor

            Finally,
Mendoza argues that Hernandez was an employee rather than an independent
contractor.  To determine whether Hernandez was an employee or an independent
contractor, we examine whether Swan had “the right to control the progress,
details, and methods of operations” of his work.  Limestone Products
Distrib. v. McNamara, 71 S.W.3d 308, 312 (Tex. 2002).  A worker is an
employee if the employer controls the means and details of accomplishing the
work.  See id.  To determine the existence of a right to
control, we examine the following factors:  (1) the independent nature of the
worker’s business; (2) the worker’s obligation to furnish necessary tools,
supplies, and materials to perform the job; (3) the worker’s right to control
the progress of the work except the final results; (4) the time for which the
worker is employed; and (5) the method of payment, whether by unit of time or
by the job.  Id.

Here,
Hernandez was hired to do a specific job––paint the tires that served as the
track boundary.  The methods by which he accomplished this task were left to
his discretion.  The evidence indicates that Swan provided the necessary tools,
but that Hernandez retained the right to control the progress of the work,
except for the final result.  The record further reflects that upon the
completion of the job, Hernandez would be paid in cash at an amount determined
by Swan Cycle.  Moreover, the summary judgment evidence indicates that
Hernandez’s pay changed depending on the nature of the work that he was doing
and that Hernandez did not complete a W-2 wage and tax statement in which he
named Swan as his employer.  Finally, the record reflects that Hernandez worked
odd jobs for other entities.  If he was available and Swan had work for him to
do, he would do it.  But if he was working for someone else, he would not do
work for Swan; there was no consequence for his refusal to perform work for
Swan.  Examining each of the aforementioned factors, we agree with the implied
finding of the trial court that Mendoza was an independent contractor. 
Furthermore, after considering Mendoza’s arguments to the contrary, we conclude
that the statute applies.  

 

Existence of a Fact Issue

            Having
determined that the statute applies, we next consider whether Mendoza raised
the existence of a fact issue.  A plaintiff meets the requirements of the
statute by showing (1) the property owner exercised or retained some control
over the manner in which the work was performed, and (2) the property owner had
actual knowledge of the danger or condition resulting in the injury and failed
to adequately warn.  See Tex.
Civ. Prac. & Rem. Code Ann. § 95.003.  These are two independent and
necessary conditions to the imposition of liability. See Dyall v.
Simpson Pasadena Paper Co., 152 S.W.3d 688, 699 (Tex. App.–Houston
[14th Dist.] 2004, pet. denied); see also Vanderbeek v. San Jacinto
Methodist Hosp., 246 S.W.3d 346, 352 (Tex. App.–Houston [14th Dist.]
2008, no pet.) (holding that control and actual knowledge are necessary elements
to impose liability).  The owner may be aware of the danger but exercise no
control, or he may exercise control and have no actual knowledge of the danger;
in either instance, the owner is statutorily shielded from liability.  Dyall,
152 S.W.3d at 699.  Control can be either contractual or actual. 
Vanderbeek, 246 S.W.3d at 352.  Because there was no contract, we
focus solely on actual control.  Id.  Actual control is the
control over the manner in which the work is performed.  Id.      

            In
their traditional motion for summary judgment, Swan and the Clingfosts argued
that because the statute applies, Mendoza was required to demonstrate that Swan
(1) exercised and retained some control over the manner in which Hernandez
performed the work, other than the right to order the work to start or stop or
to inspect progress or receive reports and (2) had actual knowledge of the
danger or condition resulting in the personal injury and death of Hernandez and
failed to adequately warn.  See Tex.
Civ. Prac. & Rem. Code Ann. § 95.003.  Mendoza demonstrated through
Trey’s deposition testimony that Trey briefly discussed the tasks Hernandez was
hired to complete and left the key in the AMT so that Hernandez could use it. 
However, Mendoza presented no evidence that Trey or anyone else on behalf of
Swan directed Hernandez how to accomplish the task for which he had been
hired.  The only fact that might be reasonably inferred from the evidence is
that Hernandez himself decided to use the John Deere with the trailer.  Mendoza
presented no evidence that Swan or Trey instructed Mendoza to use the AMT or
suggested that he do so.  Moreover, there is no evidence in the summary
judgment record that Swan or any of the Clingfosts exercised or retained
control over the manner in which Hernandez completed the task for which he was
hired.  Rather, the timing, sequence, and manner of Hernandez’s work was
determined by Hernandez, and Mendoza presented no evidence that would allow a
reasonable juror to find otherwise.  As such, we hold that the trial court
properly granted Swan City Park and the Clingfosts’ traditional motion for
summary judgment on the issue of control. 

Mendoza’s
second issue is overruled in part.[3]

 

Conclusion

We
have held that the trial court properly granted Swan and the Clingfosts’
traditional motion for summary judgment on the issue of control.  Accordingly,
we overruled Mendoza’s second issue in part.  Because Mendoza cannot prevail on
her claim without establishing the element of control, we affirm the
trial court’s judgment.  Mendoza’s first issue and the remainder of her second
issue are not necessary to the disposition of this appeal.  Therefore, we do
not address them.  See Tex. R.
App. P. 47.1.

 

                                                                   Brian
Hoyle

                                                                        
Justice

 

 

 

 

Opinion delivered March 10, 2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)

 









 [1] See Tex. Civ. Prac. & Rem. Code Ann. §§ 95.001­–.004 (Vernon 2005).

 





[2]
This issue was raised as part of Swan and the Clingfosts’ traditional motion
for summary judgment.  Because Swan and the Clingfosts had the burden of proof
on this issue, it was not included in their no evidence motion.  Therefore, we
will address the Swan and the Clingfosts’ traditional motion for summary
judgment first.  See Dunn, 271 S.W.3d at 870. 





[3]
In her first issue, Mendoza contends that the trial court erred in
excluding evidence comprising records from an OSHA investigation file.  Because
we conclude that Swan and the Clingfosts were entitled to judgment as a matter
of law even if these investigation records had been considered, we do not reach
Mendoza’s first issue.  See Tex.
R. App. P. 47.1.