**AFFIRMED and Opinion Filed December 18, 2013**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-01586-CV**

**DIBON SOLUTIONS, INC. D/B/A REVENUE TECHNOLOGY SERVICES CORPORATION, Appellant**
**V.**
**MARTINAIR HOLLAND N.V., Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-09-02903**

## MEMORANDUM OPINION
Before Justices Bridges, FitzGerald, and Myers
Opinion by Justice Bridges

Appellant Dibon Solutions, Inc. d/b/a Revenue Technology Services Corporation ("Dibon/RTS") appeals from the summary judgment entered in favor of appellee Martinair Holland N.V. ("Martinair"). In two issues, appellant contends the trial court erred in striking its amended petition when: (1) Dibon/RTS complied with rule 28 in identifying its "true name" by means of an amended petition and (2) Dibon/RTS was not a third-party intervenor, but an original plaintiff, when its amended petition was stricken as a third-party intervention that violated the trial court's scheduling order. We affirm.

**Background**

Dibon Solutions, Inc. ("Dibon") entered into a Stock Acquisition Agreement ("2005 SAA") with Revenue Technology Services Corporation ("RTS") on October 4, 2005. Under the terms of the 2005 SAA, Dibon acquired one hundred percent of RTS's common stock.

On November 29, 2007, Martinair and RTS entered into the RTS Master Subscription Service Agreement ("Agreement") for use of RTS's profit optimization products and related services. In the Agreement, RTS identified itself as "Revenue Technology Services Corporation ("RTS"), a duly registered Texas Corporation." The Agreement expressly stated:

> RTS is a trade name for Revenue Technology Services Corporation. The RTS logo is a trademark of Revenue Technology Services Corporation.

The Agreement was signed on RTS's behalf by Loren Alexander in his capacity as Chairman of RTS. Loren Alexander was Chief Executive Officer and Chairman of the Board of Directors of RTS at the time that the Agreement was executed. The Agreement was signed on Martinair's behalf by Paul Gregorowitsch in his capacity as Martinair's President and CEO. There were no other signatories or parties identified in the Agreement. The Agreement contains a "merger" clause, which reads as follows:

> This Agreement constitutes the full and complete understanding and Agreement of Client and RTS and supersedes all prior negotiations, understandings, and agreements. Except as expressly stated in this Agreement, any waiver, modification, or amendment of any provision of this Agreement will be effective only if in the form of a written attachment or amendment to this Agreement that is signed by Client and RTS.

On February 10, 2006, the Texas Secretary of State ordered the forfeiture of RTS's charter or certificate of authority for failure to comply with section 171.309 of the tax code. At the latest, Dibon was aware that RTS had forfeited its corporate existence on January 8, 2008.[1]

---

[1] Dibon filed suit against Loren Alexander, the Chairman and CEO of RTS, on January 8, 2008. In the lawsuit, Dibon alleged, among other things that Loren Alexander allowed RTS's "charter to be forfeited for non-payment of taxes." Dibon sued for breach of contract, breach of

There is no evidence in the record that Dibon or RTS ever sought the reinstatement of RTS's corporate existence.[2]

On February 11, 2009, Martinair sent a letter outlining its complaints about the services and profit optimization software provided by RTS under the Agreement and terminated the Agreement with RTS. A month later, RTS responded by filing suit against Martinair for breach of contract. RTS contended that, where the Agreement provided for a 60-month subscription period, Martinair improperly terminated the Agreement after only 6 months. RTS claimed that, under the terms of the Agreement, Martinair was therefore liable for the remaining subscription period. RTS's original petition identified the plaintiff as RTS, "a corporation organized under the laws of the State of Texas."

On January 25, 2010, RTS served its Responses to Martinair's Requests for Disclosure, stating that the correct name of the plaintiff in the lawsuit was "Revenue Technology Services Corp." RTS further stated that it knew of no other potential parties. RTS did not disclose Dibon or Dibon/RTS as a person having knowledge of relevant facts. The record also contains RTS's additional responses to requests for disclosure, dated April 22, 2011, May 24, 2011, and June 2, 2011. However, these responses do not disclose Dibon or Dibon/RTS as a person having knowledge of relevant facts.

On March 7, 2011, the fifth amended agreed level 3 scheduling order ("fifth amended scheduling order") was entered by the trial court. The fifth amended scheduling order set the following deadlines:

**March 29, 2011** Parties shall join any additional parties.

---

fiduciary duty, tortious interference, misappropriation of trade secrets and confidential information, and conversion. Dibon further made a request for accounting, declaratory judgment, and attorneys' fees.

[2] According to the record before us, as of April 26, 2011, the Texas Secretary of State's records showed that RTS's corporate existence remained forfeited.

**May 30, 2011** Parties asserting claims for relief shall supplement or amend any pleadings.

**June 14, 2011** Parties resisting claims for relief shall supplement or amend any pleadings.

...

**July 5, 2011**   All dispositive motions (including motions for summary judgment and challenges to expert witnesses) must be filed.

On June 14, 2011, Martinair filed a motion for summary judgment against RTS, arguing RTS's forfeiture of its corporate existence on February 10, 2006 deprived it of legal authority and capacity under Texas law to enter into the Agreement upon which it sued Martinair.

On June 29, 2011, an amended petition was filed by RTS, purporting to substitute RTS's parent corporation, Dibon Solutions, Inc., as the plaintiff.  According to the amended petition, the new plaintiff in the lawsuit was "Dibon Solutions, Inc. d/b/a Revenue Technology Services Corp. ("RTS"). . . a corporation organized under the laws of the State of California" ("Dibon/RTS").

On June 30, 2011, Dibon/RTS filed a response to Martinair's motion for summary judgment against RTS, asserting that Dibon/RTS had both standing and capacity to prosecute the breach of contract claim against Martinair, because it was the true plaintiff in the case as Dibon had been "doing business" as RTS and, in the alternative, as sole shareholder of RTS, it was entitled to prosecute RTS's claim.

Upon receipt of the amended petition, Martinair filed an objection to and motion to strike the amended petition as untimely under the fifth amended scheduling order.  On that same day, because the trial of the case was set to begin in less than 30 days when RTS amended its petition and because Martinair wished to conduct additional discovery, Dibon/RTS and Martinair filed a joint motion for continuance of the trial setting to November 1, 2011.

–4–

On July 7, 2011, the trial court heard Martinair's motion for summary judgment and granted in part Martinair's motion,[3] ruling that "Texas corporation Revenue Technology Services Corporation, having been forfeited by the Texas Secretary of State on February 10, 2006, lacks capacity to prosecute claims in this lawsuit." The trial court also granted in part Dibon/RTS's motion for partial summary judgment as to Martinair's fraudulent inducement claim.

On July 15, 2011, Dibon filed an assumed name certificate, asserting that it was doing business as "Revenue Technology Services Corporation." Twelve days later, on July 27, 2011, the trial court heard and granted Martinair's second amended motion to strike the amended petition. The trial court's decision was based upon its finding that Dibon Solutions, Inc. was "a new party to the case and, in filing the Amended Petition on June 29, 2011, Dibon Solutions, Inc. violated the Court's then-existing scheduling order."

On October 18, 2011, Martinair non-suited its remaining claims against RTS. The non-suit was granted by the trial court on October 29, 2011, leaving no other live claims. Therefore, on October 31, 2011, the trial court rendered final judgment that RTS take nothing on its claim against Martinair.

On appeal, Dibon/RTS only challenges the trial court's ruling on Martinair's motion to strike Dibon/RTS's amended petition.

**Analysis**

*Issue One*

In its first issue, Dibon/RTS contends the trial court erred in striking its amended petition. Specifically, Dibon/RTS contends it precisely and timely complied with rule 28 in identifying its "true name" by means of an amended petition and that the evidence demonstrates Dibon

---

[3] The trial court granted Martinair's motion for summary judgment against "Dibon Solutions, Inc. d/b/a Revenue Technology Services Corp. ("RTS")."

operated its business using the trade names of "Revenue Technology Services Corporation" and "RTS" before and during its dealings with Martinair. Dibon/RTS also argues that striking its amended petition works an injustice by allowing Martinair to receive the benefit of the contract and then avoiding reciprocal consideration.

Rule 28 permits a partnership doing business under an assumed name to file suit in that name. TEX. R. CIV. P. 28. However, for a party to take advantage of rule 28 and sue in its common or assumed name, "there must be a showing that the named entity is in fact doing business under that common name." *See KM-Timbercreek, LLC v. Harris County Appraisal Dist.*, 312 S.W.3d 722, 730 (Tex. App.—Houston [1st Dist.] 2009); *Seidler v. Morgan*, 277 S.W.3d 549, 553 (Tex. App.—Texarkana 2009, pet. denied). Whether an entity does business under an assumed or common name is a question of fact for the trial court. *Sixth RMA Partners, L.P. a/k/a RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003).

In this case, the trial court made no explicit finding on whether RTS was Dibon's assumed name, and neither party requested findings of fact on this or any other issue. When neither party requests findings of fact and conclusions of law,[4] we imply all fact findings necessary to support the trial court's judgment. *Id.* A party can challenge implied fact findings for legal sufficiency. We construe Dibon/RTS's contention that the trial court erred in denying a rule 28 substitution as a legal sufficiency challenge. *See id.* ("Although Sibley does not expressly present this contention as a legal sufficiency challenge to the implied finding of fact. . . we will construe it as such.") In reviewing this point, therefore, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

---

[4] Here, Dibon/RTS filed a motion for clarification of the court's order striking its first amended petition. However, our record does not include an order on the referenced motion. Further, our record includes no requests for findings of fact and conclusions of laws.

–6–

A corporation or foreign filing entity that "regularly conducts business or renders professional services in this state under an assumed name" must file an assumed name certificate. TEX. BUS. & COM. CODE ANN. §71.101. Unless an assumed name certificate is on file, a corporation is prohibited from maintaining an action or proceeding arising out of a contract in which an assumed name was used. *Id.* at §71.201(a).

Here, the record before us demonstrates Dibon did not file an assumed name certificate as required by section 71.101 until July 15, 2011, over three years after the execution of the Agreement to which Dibon/RTS claims it was a party.[5] The record further reflects that in their original petition against CEO and Chairman Loren Alexander, both Dibon and RTS allege that, under the 2005 SAA, Dibon agreed "to maintain and sustain the operations of RTS, as a *separate business entity* under its supervision and control [and] to maintain and preserve all of the Transferred Assets, in its *separate business*, under the RTS corporate name. . . ." Loren Alexander, acting as Chairman of RTS, signed the Agreement with Martinair, but no representative of Dibon or Dibon/RTS signed the Agreement.[6] Rule 28 does not permit a party to claim it was using an assumed name in order to gain the benefit of the rule, but requires a party to demonstrate it actually conducted business under that assumed name. *See KM*, 312 S.W.3d at 730; *Seidler*, 277 S.W.3d at 553. Therefore, considering the record before us, we conclude Dibon failed to make such a showing. *See City of Keller*, 168 S.W.3d at 822.

Dibon/RTS next argues that striking its amended petition works an injustice by allowing Martinair to receive the benefit of the contract and then avoiding reciprocal consideration. However, we have already determined Dibon is not a signatory to the Agreement. Instead, the

---

[5] This certificate was also filed a little over a month after Martinair filed its motion for summary judgment, alleging the forfeiture of RTS's corporate existence as grounds for the summary judgment.

[6] Counsel for Dibon/RTS conceded during the hearing on the motion to strike that "[i]t's not apparent from the contract to a third party other than the signatories that [Loren Alexander] is an agent of Dibon Solutions." However, this Court has already noted the law does not presume agency. *Wright Group Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 200 (Tex. App.—Dallas 2011, no pet.).

unambiguous language of the Agreement creates a contract between Martinair and RTS. Because it was not a party to the Agreement, Dibon/RTS cannot pursue a breach of contract claim with respect to the Agreement. *See Hackberry Creek Country Club v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex. App.—Dallas 2006, no pet.) (noting a breach of contract occurs when *a party* to the contract was damaged as a result of the breach). We overrule appellant's first issue.

### *Issue Two*

In its second issue, appellant contends the trial court erred in striking its amended petition as a third-party intervention that violated the trial court's scheduling order when: (1) Dibon was not a third-party intervenor, but rather the original plaintiff in the case; (2) if Dibon was a third-party intervenor, the trial court's scheduling order could not preemptively forbid Dibon's intervention; and (3) if Dibon was a third-party intervenor, the trial court could not strike Dibon's intervention after the trial court had previously granted its summary judgment and Martinair had previously asserted counterclaims against Dibon.

Under our discussion of the first issue, we have already determined that RTS, not Dibon, was the original plaintiff in this case. Therefore, appellant's first argument under its second issue fails.

We next turn to appellant's issues which assume Dibon was a third-party intervenor. Rule 60 provides that "[a]ny party may intervene by filing a pleading subject to being stricken by the court for *sufficient cause* on the motion of any party." TEX. R. CIV. P. 60 (emphasis added). The rule authorizes a party with a justiciable interest in a pending suit to intervene in the suit as a matter of right. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). To constitute a justiciable interest, the intervenor's interest must be such that if the original action had never been commenced, and it had first brought suit as the sole plaintiff, it

would have been entitled to recover in its own name to the extent of at least of part of the relief sought in the original suit. *In re Union Carbide Corp.*, 273 S.W.3d 152, 155 (Tex. 2008) (per curiam). "Because a trial court has 'broad' discretion in determining whether to strike an intervention, that discretion presumably includes consideration of *all* issues related to whether intervention was proper in the case under the circumstances, i.e., any sufficient cause." *Allen Parker Co. v. Trustmark Nat. Bank*, No. 14-12-00766-CV, 2013 WL 2457113, at *6 (Tex. App.—Houston [14th Dist.] June 6, 2013, pet. denied) (mem. op.) (emphasis in original) (citing Tex. R. Civ. P. 60; *N.E. Neighbors v. Tex. Comm'n on Envtl. Quality*, No. 03-11-00277-CV, 2013 WL 1315078, at *4 (Tex. App.—Austin March 28, 2013, pet. denied) (mem. op.)).

Appellant contends the trial court could not strike Dibon's intervention after the trial court had previously granted its summary judgment. Specifically, Dibon/RTS contends the trial court erred because it had previously "recognized Dibon ha[d] a justiciable interest in the case" by granting the motion for summary judgment as to Martinair's fraudulent inducement claims. However, the record before us reflects the motion for summary judgment in question was filed by RTS, not Dibon/RTS, on June 8, 2011. After Martinair filed its motion for summary judgment, RTS then filed its amended petition, purportedly substituting in Dibon/RTS, on June 29, 2011. Martinair filed its motion to strike on July 6, 2011. The trial court then signed an order granting summary judgment as to the fraudulent inducement claim in favor of Dibon/RTS on July 15, 2011.[7] The trial court thereafter conducted a hearing on Martinair's second amended motion to strike the amended petition on July 27, 2011.

Thus, it was not until almost two weeks after it granted summary judgment that the trial court conducted its hearing to determine whether Dibon/RTS could substitute in for RTS. It

---

[7] Martinair contends, and Dibon/RTS does not refute, that counsel for Dibon/RTS prepared the order signed by the trial court on July 15, 2011.

follows then that, contrary to appellant's argument, the trial court did not determine whether Dibon had a justiciable interest until almost two weeks after it granted the summary judgment filed by RTS. *See Horseshoe Operating Co.*, 793 S.W.2d at 657.

Appellant also contends the trial court could not strike Dibon's intervention after Martinair had previously asserted counterclaims against Dibon/RTS. Because Martinair asserted counterclaims against Dibon/RTS after the amendment, Dibon/RTS alleges Martinair must be held to have waived its right to seek to strike the amended petition. We disagree.

In its fourth amended original answer, affirmative defenses and counterclaims as to Dibon/RTS's amended petition, Martinair specifically denies: (1) it contracted with Dibon; (2) RTS or Dibon performed its obligations under the Agreement; (3) Dibon has legal capacity to sue Martinair; (4) Dibon is entitled to recover on the Agreement; and (5) Dibon was doing business under the assumed name, "Revenue Technology Services Corp." at the time the Agreement was entered into or when the lawsuit was filed. Martinair further alleges a defect of parties in that "Texas corporation RTS is a necessary party for this lawsuit to proceed." In addition, under its counterclaims, Martinair precedes the claims with the following: "[i]f Dibon is deemed actually to be Plaintiff in this case." We, therefore, conclude Martinair did not waive its right to seek to strike the amended petition.

Appellant next argues under the assumption that appellant was an intervenor that the trial court's scheduling order could not preemptively forbid Dibon's intervention. We again disagree.

A party, namely RTS, may not amend its pleadings after the deadline set forth in a pretrial order without securing leave of court. *See Hart v. Moore*, 952 S.W.2d 90, 95 (Tex. App.—Amarillo 1997, pet. denied). Even when such leave is sought, the trial court may properly deny the request. *See Roskey v. Continental Cas. Co.*, 190 S.W.3d 875, 881 (Tex. App.—Dallas 2006, pet. denied) (the trial court did not abuse its discretion in refusing party's

amendment 6 days after deadline in pretrial order, because the party could have amended the pleading during the 17 months case was pending). A court should refuse amendment if: (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment results in the assertion of a new claim or defense and thus is prejudicial on its face. *See State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994).

The record before us shows RTS filed suit against Martinair on March 11, 2009 for breach of contract. Over the course of the case, RTS consistently maintained that RTS (the Texas corporation) was a proper plaintiff to the lawsuit. In its responses to requests for disclosures (four separate responses), RTS did not disclose Dibon as a person having knowledge of relevant facts. Only after Martinair filed its motion for summary judgment against RTS, alleging its forfeiture of its corporate status, did RTS file its amended petition, seeking to substitute Dibon/RTS (a California corporation) as plaintiff in this lawsuit.

The fifth amended agreed level 3 scheduling order established May 30, 2011 as the deadline for the parties to amend their pleadings. Without seeking leave of court, RTS amended its pleading on June 29, 2011, purportedly substituting in an entirely new party over two years after it instituted suit against Martinair. Under the facts of this case, an amendment which adds an entirely new party after the deadline to amend (especially when filed without leave of court) is necessarily prejudicial to Martinair. *See State Bar of Texas*, 874 S.W.2d at 658. We conclude appellant's amended petition violated the trial court's amended agreed level 3 scheduling order. *See Roskey*, 190 S.W.3d at 881.

Thus, even after assuming Dibon was an third-party intervenor in this case and considering *all* issues related to whether intervention was proper in the case under the circumstances, we must conclude the trial court was within its broad discretion to conclude it had

"sufficient cause" to strike the purported intervention by Dibon/RTS.  *See* TEX. R. CIV. P. 60;

*Allen Parker*, 2013 WL 2457113, at *6.  We overrule appellant's second issue.

## Conclusion

Having overruled appellant's two issues, we affirm the judgment of the trial court.


111586F.P05


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DIBON SOLUTIONS, INC. D/B/A
REVENUE TECHNOLOGY SERVICES
CORPORATION, Appellant

No. 05-11-01586-CV      V.

MARTINAIR HOLLAND N.V., Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-09-02903.
Opinion delivered by Justice Bridges.
Justices FitzGerald and Myers participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.
      It is **ORDERED** that appellee MARTINAIR HOLLAND N.V. recover its costs of this
appeal from appellant DIBON SOLUTIONS, INC. D/B/A REVENUE TECHNOLOGY
SERVICES CORPORATION.


Judgment entered December 18, 2013



/David L. Bridges/
DAVID L. BRIDGES
JUSTICE